CASE 69—ACTION BY ED. THOMPSON AGAINST THE CITY OF LEXINGTON
FOR SERVICES AS A FIREMAN.—MAY 28.

# City of Lexington v. Thompson.

APPEAL FROM. FAYETTE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

CONSTITUTIONAL LAW—IMPLIED RESTRICTIONS—MUNICIPAL CORPORA-
TIONS—INTERFERENCE BY LEGISLATURE WITH LOCAL AFFAIRS—
FIXING COMPENSATION OF FIREMEN.

Held: 1. State Legislatures are subject to implied restrictions,
and therefore an act of the Legislature may be declared void
though. not expressly prohibited by the Constitution.

2. The fixing of the compensation of the officers and members of a
city fire department, devised for the benefit of the local com-
munity, is not governmental in its nature, but is a matter af-
fecting the municipality in its private or corporate capacity,
and therefore act March 15, 1900, section 4, attempting to fix
such compensation, is void as violative of the city's right to
control its local affairs.

WALTER S. BRONSTON, CITY SOLICITOR, ATTORNEY FOR APPELLANT.

On March 15, 1900, appellee, Ed. Thompson was in the employ
of the city of Lexington, as an ordinary fireman, at a salary
of fifty dollars per month, which salary had been previously
fixed by ordinance.    On March 15, 1900, the Legislature of
Kentucky passed an act entitled "an Act to amend an' act en-
titled an act for the government of cities of the second class,
approved March 19, 1894."    Section 4, of this act reads as
follows:

"The city fire department shall consist of one chief, whose
salary shall not be less than one hundred and fifty dollars per
month, the engineer's salary shall be eighty dollars per month,
the electrician's salary shall be seventy dollars per month, and
the ordinary fireman's salary shall be sixty-five dollars per
month."

Thompson continued to act as an ordinary fireman for about
sixteen months, at which time he severed his connection with
the city department, and now sues the city for fifteen dollars
per month for the period of sixteen months, this being the
difference between the salary of fifty dollars per month fixed

by the ordinance and sixty-five dollars per month fixed by said act.

To this petition the city of Lexington filed a demurrer, which was overruled by the court, and the case now comes before this court upon the simple proposition whether or not said act of the Legislature is constitutional.

Our contention is, that the General Assembly of this Commonwealth has no power to regulate the salaries of firemen in cities of the second class or in any other city.

We hold that in seeking to regulate the salaries of firemen in ciites of the second class, the legislative enactment violates the fundamental principles of local self-government, and the constitutional law of the State in the following particulars:

1. It is absolutely subversive and destructive of the right of local self-government; a power well understood and recognized, and which has been in practical operation before any written Constitutions were ever adopted.

2. The act in question is unconstitutional, because it seeks to establish an office with an unlimited time.

3. It is again violative of the provisions of the Constitution in that it seeks to give to private individuals, public emoluments, when they have not rendered any public service in return for the same.

4. In the case at bar, appellee accepted a less salary at a time when he believed he was entitled to a greater one under the law.

5. And finally the act in question seeks to establish a court with judicial powers from which there can be no appeal and whose judgment is final and conclusive.

## AUTHORITIES CITED.

New Orleans v. N. O. Water Co., 142 U. S., 79-91, Goodnow Mun. Prob. ch. 4; Mt. Hope Cemetery v. Boston, 158 Mass., 509; Com. of Mass. v. Plaisted, 2 L. R. A., 145; Dillon Mun. Corp., 4 ed., sec. 12, A. 15; State, ex rel. Smyth, Atty. Gen. v. Moores, Mayor, et al., 76 N. W. Rep., 175; State v. Leavy, 22 Neb., 454; Von Holst Con. Law, 271; Cooley, 5 ed. p. 203; Cin. W. & Z. R. Co. v. Com. of Clint. Co., 10 Ohio St., 77; People v. Com. Council of Detroit, 28 Mich., 288; Rathbone v. Wirth, 150 N. Y., 459, 24 Mich., 44; Utah ex rel. Jameson et al. v. Deny, Mayor. et al., 21 N. E. Rep., 252; City of Evansville et al. v. State ex rel., Blend et al., 21 N. E. Rep., 274; (118 Ind., 382) People v. Hurlbert, 24 Mich., 105; 21 N. E. R., 282; Louisville v. Commonwealth, 1 Duvall, 295;

Co. *ex rel.* Bulkley v. Williams, Treas. Glastonbury (168 Com., 131) 48 L. R. A., 462; Ordronaux Constitutional Legislation, 62; Cooley, 5 ed., 47; Neumeyer, Auditor v. Krakel, 23 R., 195; Kentucky Statutes, 2874; 20 R., 1609; Constitution, sec., 181; City Lex. v. Rennick, 20 R., 1611; Alexander v. Woodford's Springs Lake Fishing Co., 90 Ky., 222; Rau v. City Little Rock, 34 Ark., 303; 2 Par. Con., 618; 2 Chit. on Con., 1101-1127; Brit on Con., 417; King v. New Orleans, 14 La., 389; Emire v. Gilbert & Co., Wright, Ohio, 767; Woodburn's Admr. v. Stout, 28 Ind., 77; Kirby v. Taylor, 6 Johns. Chy., 242; Milleken v. Brown, 1 Rawls, 391; Riley v. Kershaw, 52 Misso., 224; Palmeston v. Huxford, 4 Denio., 166; Pratt v. Breckinridge, 23 R., 1356, 1858.

KINKEAD & MILLER, FOR APPELLEE.

The appellant contends that the act of March 15, 1900, is unconstitutional upon the idea that it is an infringement upon the right of local self-government.

It is admitted that all municipal corporations are mere creatures of the State, having within themselves no inherent power, and possessing only such powers as are conferred upon them by the State, which are expressed in their charter and which at the same time subjects them to corresponding duties. But by reason of their creation, the State neither surrenders nor is deprived of that general control over its citizens which it formerly possessed.

We insist that the law must stand as written, until repealed, unless some inhibition, either in express terms or by implication, appears in the Constitution.

The maxim, that local concerns shall be managed in the local districts, is subject to such exceptions as the legislative power of the State shall see fit to make, and when made, it must be presumed that the public interest, convenience and protection are thereby subserved.

When it is admitted that the Legislature alone has the constitutional power to say what form of government a municipality shall have, to designate its officers, fix their terms, and prescribe their duties, why, we ask, shall it be limited in indicating the salary that shall attach thereto.

This law may be good or bad, but be its evil tendencies ever so great, its correction is exclusively within the province of the legislative branch of the government, and not with the courts.

### AUTHORITIES CITED.

Act of March 15, 1900, amending charters of cities of the

second class. Cooley's Con. Lim., pp. 193, 197, 202, 203, 204, 228, 230, 153, 227; The People v. Fisher, 24 Wend., 220; Cochran v. Van Surlay, 20· Wend., 381, 383; Com. of Massachusetts v. Plaisted, 2 L. R. A., 145; Griswold v. Hepburn, 2 Duv., 24; Sill v. Village of Corning, 15 N. Y., 303; Adams v. How., 7 Am. Dec., 218; U. S. v. Railroad Co., 17 Wall, 329; Meriwether v. Garrett, ·102 U. S. Rep., 473; Adams v. How., 7 Am. Dec., 218; People v. Draper, 15 N. Y., 532; Police Comrs. v. City of Louisville 3 Bush, 602.

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

By the fourth section of an act amending the act for the government of cities of the second class, approved March 15, 100 (Acts 1900, p. 15), it was provided: "The said fire department shall consist of one chief, whose salary shall not be less than one hundred and fifty dollars per month; the engineer's salary shall be eighty dollars per month; the electrician's salary shall be seventy dollars per month, and the ordinary fireman's salary shall be sixty-five dollars per month." The appellee, Thompson, brought suit against the appellant, the city of Lexington, a city of the second class, alleging that he was a resident of that city, and employed by it as an ordinary fireman, having been appointed by the board of police and fire commissioners; that prior to the passage of the act his salary as fireman was $50 per month, and by that act was increased to $65 per month; that he continued to serve as ordinary fireman up to July 22, 1901, when he resigned; that from time to time he made demand upon the city for the increase of salary provided for by the act at the rate of $15 per month, which was refused. His prayer was for judgment for the difference between the salary paid him and that fixed by the act during the period from March 15, 1900, to July 22, 1901, aggregating $243.75. A demurrer to the petition was filed and overruled. The city stood by its demurrer, and judgment was rendered against it. The ground of the demurrer is that

the act is violative of the right of local self-government
by the city in a matter over which the municipality has ex-
clusive control in its private or corporate capacity, and that
the act is therefore void.

For appellee it is contended that the act does not violate
any provision of the Constitution of the State, and there-
fore can not be declared void because it is, or is supposed
to be, in violation of the spirit which may be supposed to
pervade that instrument. Mr. Cooley is quoted in support
of this proposition: "It the courts are not at liberty to
declare statutes void because of their apparent injustice or
impolicy, neither can they do so because they appear to the
minds of the judges to violate, fundamental principles of
republican government, unless it shall be found that those
principles are placed beyond legislative encroachment by
the Constitution. The principles of republican govern-
ment are not a set of inflexible rules, vital and active in
the constitution. though unexpressed, . . . nor are
courts at liberty to declare an act void because, in their
opinion, it is opposed to a spirit supposed to pervade the
Constitution, but not expressed in words." Cooley, Const.
Lim. (5th Ed.), pp. 202-204. Numerous other authorities
are cited in support of the doctrine thus laid down, and
among them the opinion of Chief Justice Robertson in
Griswold v. Hepburn, 2 Duv., 24, where, after discussing
the difference between the federal Constitution as a grant
of power and the State Constitution as a written lim-
itation upon the powers of the legislative organ of the peo-
ple, it is said: "But the same reason being inapplicable
to state legislation of doubtful compatibility with a State
Constitution, proper deference to the legislative depart-
ment should preponderate in favor of the constitutional-
ity of its acts, and requires the judicial department to rec-

ognize them as laws, unless it shall be clearly satisfied that they are not. Whenever a jurist inquires whether a State statute is consistent with the State Constitution, he looks into that Constitution, not for a grant, but only for some limitation of the powers inherent in the people's legislative organ so far as not forbidden by their organic law." These general principles may be freely conceded. It is also urged that, as said by the supreme court in U. S. v. Baltimore & O. R. Co., 17 Wall., 329, 21 L. Ed., 597, a municipal corporation is not only a representative of the State, "but is a portion of its governmental power. It is one of its creatures, made for a specific purpose, to exercise within a limited sphere the powers of the State. The State may withdraw these local powers of government at pleasure, and may, through its Legislature or other appointed channels, govern the local territory as it governs the State at large. It may enlarge or contract its powers or destroy its existence." These general statements of the legislative power over municipal affairs are always to be read in the light of the state of fact to which they are applied by the courts which give them utterance. Unless so read, they are apt, at times, to be misleading. In fact, the very authorities which thus state the general rule state also the limitations to be placed upon it. Speaking of the limitation upon legislative power, Judge Cooley says: "It does not follow, however, that in every case the courts, before they can set aside the law as invalid, must be able to find in the Constitution some specific inhibition which has been disregarded, or some express command which has been disobeyed. Prohibitions are only important where they are in the nature of exceptions to the general grant or power; and, if the authority to do an act has not been granted by

the sovereignty to its representatives, it can not be necessary to prohibit its being done." Const. Lim. (5th Ed.), p. 203. So, Von Holst (Const. Law, 271), after stating the general rule that the legislative power of the State Legislatures is unlimited so far as no limits are set to it by the federal or State Constitution, proceeds: "This does not mean, however, that these restrictions must always be expressed in explicit words. As it is generally admitted that the factors of the federal government have certain implied powers," so it has never been disputed that the State Legislatures are subject to 'implied restrictions;' that is, restrictions which must be deduced from certain provisions of the federal or State Constitutions, or that arise from the political nature of the Union, from the genius of American public institutions." And in Mechem on Public Officers (section 123), it is said: "Indeed, this right of local self-government, as it has been briefly termed, is held to be an established feature and incident of our political system, and it is not within the power of the Legislature of a State to permanently fill by appointment the local offices established by law for purely local purposes." See, also, Cincinnati, W. & Z. R. Co. v. Clinton Co. Com'rs, 1 Ohio St., 77. Said Mr. Edward Bates, in his argument in Hamilton v. St. Louis Co. Ct. (15 Mo., 13, cited with approval in Cooley, Const. Lim. [5th Ed.] p. 49), a Constitution is "not the beginning of a community, nor the origin of private rights. It is not the fountain of laws, nor the incipient state of government. It is not the cause, but consequence, of personal and political freedom. It grants no rights to the people, but is the creature of their power, the instrument of their convenience, designed for their protection in the enjoyment of the rights and powers which they possessed before the Constitution was made. It is

City of Lexington v. Thompson.

but the form and framework of the political government, and necessarily based upon the pre-existing condition of laws, rights, habits, and modes of thought. . . . A written Constitution is, in every instance, a limitation upon the powers of government in the hands of agents." And Mr. Webster said: "Written constitutions sanctify and confirm great principles, but the latter are prior in existence to the former." A municipality is a state agency for governmental purposes. It exercises political governmental powers delegated by the State. As to such powers, and as to the duties which attach to their exercise in the administration of justice and the preservation of the public peace, it is *imperium in imperio*; a part of the governmental machinery of the Commonwealth. Therefore its charter and legislative acts regulating the use of State property held by it did not constitute contracts within the meaning of the constitutional provision. Its political powers are not vested rights as against the State. As well said by Mr. McQuillin in a recent article upon the subject (34 Am. Law Rev., p. 506): "It is thus manifest that in matters of public concern, such as relate to the performance of functions by the city as the agent of the State, the Legislature is not limited to conferring a discretionary power, but may exercise authority where the local officers or agencies neglect or refuse to discharge their public duty in providing for the public needs of the locality, or in voting or levying the proper taxes for public purposes. As to duties which the people in the several localities owe to the State at large, they can not be allowed a discretionary authority to perform them or not, as they may choose, for such authority would be wholly inconsistent with anything like regular and uniform government of the State."

The conceded legislative control over the exercise of these governmental functions has furnished the subject of numerous adjudications. What constitutional limitations, either express or implied, existed upon the exercise of this legislative control it is not necessary, nor is it our purpose, in this case to determine. But a municipal corporation is not merely a public agency of the State. Its governmental functions are not all the functions which it possesses or exercises. It is, in part, a corporation possessed of private franchises and rights, which it may exercise for its private, corporate advantage, for the benefit of the community, as distinct from the State government. It may hold and manage property, not for the benefit of the State, but to supply local needs and conveniences; and in respect thereto it acts as a private corporation, and in that capacity may sue and be sued. "With respect to its private or proprietary rights and interests," it is entitled to the protection of the Constitution, like other corporations. City of New Orleans v. New Orleans Water Works Co., 142 U. S., 79, 12 Sup. Ct., 142, 35 L. Ed., 943. Assuming that as to the governmental functions of a municipality the contention of appellee is true to its broadest extent, and that what the Legislature gives to the municipality by its act of incorporation it may alter or destroy at pleasure, it does not at all follow that the rights and privileges of the local community, which become vested in the corporate entity created by the Legislature for the benefit of the community, are likewise subject to the legislative control. The Legislature can not take away from the community rights or property which existed or were acquired without the aid of legislation. A municipality has a dual character. In its character as a State agency it exercises governmental, political, public and administrative powers and duties. In

its capacity as a private corporation it exercises rights
and powers inherent in the people of the community, which
have never been surrendered to any department of the
government, and which are property rights within the pro-
tection of the Constitution. Among the earliest courts to
recognize this dual capacity of municipalities are those of
Kentucky. The question arose upon a claim by the city of
Louisville to exemption from State taxation. In that case
(City of Louisville v. Com., 1 Duv., 297, 85 Am. Dec., 624)
this court, through Judge Robertson, said: "But a muni-
cipal corporation, like a State, a county, or the city of
Louisville, is much more than a person. While nominally
a person, it is vitally a political power; and each, in its
prescribed sphere, is *'imperium in imperio.'* All are con-
stituent elements of one total sovereignty. The city of
Louisville, to the extent of the jurisdiction delegated to
it by its charter, is but an effluence from the sovereignty
of Kentucky, governs for Kentucky, and its authorized leg-
islation and local administration of law are legislation and
administration by Kentucky through the agency of that
municipality. The tax law of Kentucky constructively ap-
plies to persons only, and not at all to political bodies ex-
ercising in different degrees the sovereignty of the State.
. . . . And if, notwithstanding the specified exceptions,
the public property of the State and counties is exempt, the
same reason exempts the public property of Louisville used
for carrying on its municipal government. But, so far as
any of its property may be used, not for that purpose, but
only for the convenience or profit of its citizens individual-
ly or collectively, this it owns and uses as a private corpor-
ation, and, like the property of all such corporations not
expressly exempted, it is a legal subject of assessment for
taxation. The more precise and distinctive test for classi-

fication is this: Whatever property, such as court house, prison, and the like, which became necessary or useful to the administration of the municipal government, and is devoted to that use, is exempt from State taxation, but whatever is not so used, but is owned and used by Louisville in its social or commercial capacity as a private corporation, and for its own profit, such as vacant lots, market houses, fire engines, and the like, is subject to taxation." Mr. Dillon thus states the distinction: "The administration of justice, the preservation of public peace, and the like, although confided to local agencies, are essential matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas works and water works, the construction of sewers, and the like, are matters which pertain to the municipality as distinguished from the State at large." Mun. Corp., section 58. The Massachusetts court. recognizing the water works, markets, hospitals, cemeteries, libraries, and the system of parks of Boston as established "for the benefit of the public," declares them to be "held more like the property of a private corporation," and therefore protected from legislative interference. Mt. Hope Cemetery v. City of Boston, 158 Mass., 519, 33 N. E., 695, 25 Am. St. Rep., 515. And again, in Dillon on Municipal Corporations (section 12a), it is said: "In many of its more important aspects, a modern American city is not so much a miniature State as it is a business corporation, its business being to wisely administer the local affairs and economically expend the revenue of an incorporated community. As we learn this lesson, and apply business methods to the scheme of municipal government and the conduct of municipal affairs, we are on the right road to better and more satisfactory results." In Nebraska the Legislature passed an act establishing a

City of Lexington v. Thompson..

board of police and fire commissioners, to be appointed by
the Governor, to whom there was given all powers and du-
ties connected with the appointment, removal, and disci-
pline of the members of the police and fire departments.
It was there held (State v. Moores, 76 N. W., 175, 41 L. R.
A., 624, overruling a former decision) that the act was
void. Said the court:  "It is true that the State Consti-
tution is not a grant of legislative power, and the law-
making body may legislate upon any subject not inhibited
by the fundamental law; but it by no means follows from
this that the Legislature is free to pass laws upon any
subject unless in express terms prohibited by the Constitu-
tion.  The inhibition on the power of the Legislature may
be by implication as well as by expression.  Laws may be
and have been declared invalid, although not repugnant to
any express restriction contained in the fundametal law."
To the same effect, see Rathbone v. Wirth, 150 N. Y., 459,
45 N. E., 15, 34 L. R. A., 408.  The same conclusion was
reached as to a similar law of Indiana in the cases of
State v. Denny (Sup.) 21 N. E., 252, 4 L. R. A., 79; City of
Evansville v. State, Id., 267, 4 L. R. A., 93; and State v.
Denny, Id., 274, 4 L. R. A., 65.  In the case first named,
the court said:  "The construction of sewers in a city, the
supplying of gas, water and fire protection, and many other
matters that might be mentioned, are matters in which
the local communities alone are concerned, and in which
the State has no special interest; and they are matters
over which the people affected thereby have exclusive con-
trol, and it can not, in our opinion, be taken away from them
by the Legislature."  In Western Sav. Fund Soc. v. City
of Philadelphia, 31·Pa., 183, 72 Am. Dec., 730, Chief Jus-
tice Lewis, delivering the opinion of the court, said:  "The
supply of gas light is no more a duty of sovereignty than

the supply of water.   Both these objects may be accom-
plished through the agency of individuals or private cor-
porations, and in very many instances they are accomplished
by these means.   If this power is granted to a borough or
a city, it is a special private franchise, made as well for
the private emolument and advantage of the city as for
the public good.   The whole investment is the private prop-
erty of the city, as much so as the lands and houses belong-
ing to it.   Blending the two powers in one grant does not
destroy the clear and well-settled distinction, and the pro-
cess of separation is not rendered impossible by the con-
fusion.   In separating them regard must be had to the ob-
ject of the Legislature in conferring them.   If granted for
public purposes exclusively, they belong to the corporate
body in its public, political or municipal character.   But
if the grant was for purposes of private advantage and
emolument, though the public may derive a common ben-
efit therefrom, the corporation *quoad hoc* is to be regarded
as a private company.   It stands on the same footing as
would any individual or body of persons upon whom the
like special franchises have been conferred."

The distinction between the two capacities in which a
municipality may act is nowhere better stated than in the
two great opinions of Judge Cooley in People v. Hurlbut,
24 Mich., 44, 9 Am. Rep., 103, and People v. Common Coun-
cil of Detroit, 28 Mich., 228, 15 Am. Rep., 202.   In the
former case the question was as to the power of the Leg-
islature to appoint permanent officers for the full term,
whose duties were purely municipal, and arose over an act
which created and appointed a board of public works.   In
the opinion by Judge Cooley, it was said:   "In the case be-
fore us, the officers in question involve the custody, care,
management and control of the pavements, sewers, water-

works, and public buildings of the city, and the duties are
purely local.   The State at large may have an indirect in-
terest in an intelligent, honest, upright and prompt dis-
charge of them, but this is on commercial and neighbor-
hood grounds, rather than political, and it is not much
greater or more direct than if the State line excluded the
city.   Conceding to the State the authority to shape the
municipal organizations at its will, it would not follow that
a similar power of control might be exercised by the State
as regards the property which the corporation has acquired,
or the rights in the nature of property which have been
conferred upon it.   There are cases which assert such
power, but they are opposed to what seem to be the best
authorities, as well as the soundest reason.   The municip-
ality, as an agent of government, is one thing; the corpor-
ation, as an owner of property, is in some particulars to be
regarded in a very different light.  .  .  .   Constitution-
al freedom certainly does not consist in exemption from
governmental interference in the citizen's private affairs;
in his being unmolested in his family, suffered to buy, sell,
and enjoy property, and, generally, to seek happiness in
his own way.   All this might be permitted by the most ar-
bitrary ruler, even though he allowed his subjects no de-
gree of political liberty.   The government of an oligarchy
may be as just as regardful of private rights and as little
burdensome as any other; but if it were sought to estab-
lish such a government over our cities by law, it would
hardly do to call upon a protesting people to show where,
in the Constitution, the power to establish it was prohib-
ited.   It would be necessary, on the other hand, to point
out to them where and by what unguarded words the power
had been conferred.   Some things are too plain to be writ-
ten.  .  .  .   The State may mold local institutions accord-

ing to its views of policy or expediency; but local government is a matter of absolute right, and the State can not take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the State not only shaped its government, but, at discretion, sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs or no control at all." In the latter case of People v. Common Council of Detroit, the question was more nearly similar to that presented in the case at bar. It was the question of the legislative power to compel local improvements, which is practically the same question as here presented, viz., the legislative power to compel expenditure for a local purpose. The question, as stated in the opinion, was whether there rested upon the judiciary the duty, "by the compulsory process of this court, to coerce the city of Detroit into entering in contracts involving a debt for a very large sum for an object of purely local concern, which the legislative body of the city has refused to make." Said the court, through Judge Cooley: "In People v. Hurlbut, 24 Mich., 44, 9 Am. Rep., 103, we considered at some length the proposition which asserts the amplitude of legislative control over municipal corporations, and we there conceded that, when confined, as it should be, to such corporations as agencies of the State in its government, the proposition is entirely sound. In all matters of general concern there is no local right to act independently of the State; and the local authorities can not be permitted to determine for themselves whether they will contribute through taxation to the support of the State government, or assist, when called upon, to suppress insurrections, or aid in the enforcement of the police laws. Upon all such

City of Lexington v. Thompson.

subjects the State may exercise compulsory authority, and
may enforce the performance of local duties, either by em-
ploying local officers for that purpose or through agents
or officers of its own appointment. . . . But we also
endeavored to show in People v. Hurlbut that, though mun-
icipal authorities are made use of in State government,
and as such are under complete State control, they are
not created exclusively for that purpose, but have other
objects and purposes peculiarly local, and in which the
State at large, except in conferring the power and regu-
lating its exercise, is legally no more concerned than it is
in the individual and private concerns of its several citi-
zens.    Indeed, it would be easy to show that it is not from
the standpoint of State interest, but from that of local
interest, that the necessity of incorporating cities and vil-
lages most distinctly appears.   State duties of a local na-
ture can, for the most part, be very well performed through
the employment of the usual township and county organ-
izations; so that if the State alone, in its corporate capac-
ity, were to be regarded, the conferring of special corpor-
ate powers on cities and villages might very well be dis-
pensed with. . . . The twofold character of these cor-
porations, as organizations on the one hand for State pur-
poses, and on the other hand for the benefit of the individ-
ual corporators, has invariably been recognized by this
court wherever there has been occasion to refer to it.   We
also referred, in People v. Hurlbut, to several decisions in
the federal supreme court and elsewhere to show that muni-
cipal corporations, considered as communities endowed
with peculiar functions for the benefit of their own citizens,
have always been recognized as possessing powers and
capacities and as being entitled to exemptions distinct
from those which they possess or can claim as conveniences

in State government. If the authorities are examined, it will be found that these powers and capacities, and the interests which are acquired under them, are usually spoken of as private, in contradistinction to those in which the State is concerned, and which are called 'public,' thus putting these corporations, as regards all such powers, capacities, and interests, substantially on the footing of private corporations. . . . But it can not be contended that authority in the Legislature to determine what shall be the extent of capacity in a city to acquire and hold property is equivalent to or contains within itself the authority to deprive the city of property actually acquired by legislative permission. As to the property it thus holds for its own private purposes, a city is to be regarded as a constituent in State government, and is entitled to the like protection in its property rights as any natural person who is also a constituent. The right of the State, as regards such property, is a right of regulation, and, though broader than exists in the case of individuals, is not a right of appropriation. The constitutional principle that no person shall be deprived of property without due process of law applies to artificial persons as well as natural, and to municipal corporations in their private capacity, as well as to corporations for manufacturing and commercial purposes. And when a local convenience or need is to be supplied in which the people of the State at large or any portion thereof outside the city limits, are not concerned, the State can no more, by process of taxation, take from the individual citizens the money to purchase it, than they could, if it had been procured, appropriate it to State use. To this extent the corporate right appears to us to be a clear and undoubted exception to the general power of control which is vested in the State."

It may be admitted that the line which distinguishes those matters with respect to which cities, as State agencies, exercise governmental functions from those as to which it acts in its private, corporate capacity, representing the people of the community, is not always well-defined. It may well be that, in cases in which it is difficult to ascertain to which class a right, a power, or a function should be assigned, the courts would hesitate to annul an attempted exercise of legislative power.   But in cases in which the proper classification can be ascertained the courts should not, and do not, hesitate to act.   Upon a question of this kind it is to be expected that under the varying provisions of various State Constitutions, and with the different procedures and customs which obtained in the various States at and before the  date of the adoption of those Constitutions, there should be conflict in the authorities.   For example, in some of the cases we have cited the systems devised for police and fire protection seem to have both been regarded as purely municipal and local, and therefore exempt from legislative interference.   The better opinion as to police systems seems to be that inasmuch as the State is charged primarily with the preservation of public peace and the protection of life and property in the cities as well as in the rural districts, the city police is, in large measure at least, a part of the State constabulary, and its members perform the functions of State officials in the exercise of delegated State sovereignty.   Therefore, in so far as the police systems of our cities form a part of the State government, they are subject to legislative control.  ·And this control has been distinctly recognized  by this court in Neumeyer v. Krakel (110 Ky., 624) (23 R., 190) (62 S. W., 518).   But between the police systems of municipalities and the fire departments there seems to be a manifest dis-

tinction, though many of the courts—as in Indiana, Nebraska and California—have recognized the officers of both departments as purely municipal and local. The act in question does not undertake to deprive the local authorities of the power of appointment or selection of the fire commissioners, but only to regulate and fix the salaries of the officers and employes. It seems, conceded that the establishment of fire departments by municipalities is a voluntary act of self-protection; that the municipality, on grounds of public policy, is not responsible for negligence of its fire department; and that the property of the fire department is held by the municipalities in their capacity of private corporations. We do not undertake to say that the State is devoid of power to take measures for the protection of the property of its citizens from fire. The question before us is whether the rate of payment of the employes of such a system, devised for the benefit of the local community, of no special interest or advantage to the State, except in so far as it is advantageous and beneficial to the community, is municipal or governmental in its nature. If the rate of pay to be fixed for such employes is governmental, then, also, is the variety of fire engines to be used, the size and breed of the horses which pull them, the number of fire plugs or cisterns to be established, and the personnel of the force. If the Legislature can arbitrarily fix the rate of payment for such services at $65 per month, it can fix it at any other sum which it deems reasonable; and if fixing the pay of firemen is a governmental function because firemen render service in the preservation of the property of citizens of the Commonwealth, then it is also a governmental function to fix absolutely the *per diem* of the street sweepers and the monthly wages of the janitors in the city hall. We do not think such legis-

lative interference in a matter in which no one but the
firemen and the taxpayers of the city can possibly be inter-
ested could have been in contemplation of the framers of
our Constitution, or of the voters who sanctioned its adop-
tion. If such a power is governmental, it is governmental
also to fix the wages of every employe of every city, of
whatever class. There were cities and towns before the
Constitution was adopted. At the date of its adoption
they were managing their own little local affairs. They
were employing and paying the members of their fire de-
partments, as in times gone by they had managed their
own volunteer fire departments. The makers of the or-
ganic law—the voters whose ballots operated to enact it—
voted for it with these facts before them, and they limited
the time which might be devoted to legislation to 60 days
in each 2 years. Is it conceivable that they expected or in-
tended to permit the Legislature to take charge of the petty
salaries of every hamlet in the State? As said by Judge
Olds in State v. Denny (Ind. Sup.), 21 N. E., 282, 4 L. R. A.,
65: "It is fair to presume that the people of the State,
in the adoption of the Constitution, did not intend to sur-
render the right of local self-government in so far as to
allow the Legislature to take charge of the fire depart-
ment of every town and city of the State, and to appoint
officers to take charge of and manage the affairs of such de-
partment, and limit the legislative body to 60 days every
2 years. We do not believe that such was the intention of
the people at the time, nor do we believe that such is the
extent of the power at the present time; nor is there any
word or sentence in the Constitution granting such power."
As said by Judge Cooley, "Some things are too plain to be
written. The State has no interest in the property within
a city or town, except such indirect interest as it has in

the property of all its citizens. Since the organization of the State government, towns and cities have universally exercised the exclusive right of self-government in the control and repair of streets, alleys, and sidewalks, in the construction of sewers and waterworks, and the organization and control of fire departments. They have been held liable for damages resulting by reason of defects in sidewalks, streets and sewers. All property within its corporate limits is liable for the payment of debts created by the municipality in providing these necessities to the municipality, and in which the people other than those residing within the particular town or city are in no way directly interested." We do not think the Legislature can fix the salaries of firemen, any more than it can fix the pay of street sweepers, the drivers of ash carts, or fix the price per square yard which the citizen shall pay for an improvement of the public ways.

The doctrines stated in McDonald v. City of Louisville (recently decided) 113 Ky., 425) (24 R.,271) (68 S. W., 413) are in full accord with the views here expressed.

For the reasons given, the judgment is reversed, and cause remanded, with directions to sustain the demurrer to the petition, and for further proceedings consistent herewith.

Whole court sitting.