CASE 53—PETITION EQUITY—NOVEMBER 21.

98  319
114  571

# Commissioners of Sinking Fund v. Grainger, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. REPEAL OF STATUTE.—The act of March 15, 1869, to increase the resources of the Sinking Fund of the city of Louisville, and providing for that purpose a tax of forty cents to pay the bonded debt of the city, was repealed by sections 2981 and 3011 of the Kentucky Statutes (part of the charter for cities of the first class), which provide a wholly different method for supplying the necessary revenues to the Sinking Fund. And this is true, although section 3010 of the Kentucky Statutes provides that "the Sinking Fund to pay the bonded debt of the city is hereby continued as now established by law," as this merely continues the existence of the appellant corporation and does not continue in force all the existing statutes regulating the raising of revenue for the benefit of the Sinking Fund.

2. RIGHT OF SINKING FUND COMMISSIONERS TO COMPEL CITY COUNCIL TO LEVY TAX.—Under section 2981 of the Kentucky Statutes the general council of the city may in its discretion omit to levy in any year an *ad valorem* tax for the benefit of the Sinking Fund, and, therefore, the commissioners of the Sinking Fund can not maintain an action to compel it to make such a levy.

3. SAME.—As the appellant corporation has no duty to perform in the matter of providing funds or raising revenues for the payment of the bonded debt of the city it can not compel the general council to levy a tax for that purpose, even though it be the duty of that body to make such a levy. And while a holder of the city's bonds as to which default had been made would have the right to sue and compel payment from the city, the appellant corporation is not in such a sense the representative of the bondholders as to entitle it to demand relief.

W. O. HARRIS, P. B. & UPTON W. MUIR FOR APPELLANT.

1. The appellants had the right to maintain this action. This is not a suit against the city, but a suit by a corporation constituting one branch of the city government against the individuals constituting another branch of the city government to require them

to perform a duty enjoined upon them by repeated statutes of the State.    (Page, Auditor, v. Hardin, 8 B. Mon.; Elliott's Acts and Ordinances, 393; Act of March 9, 1867, sec. 10; Burnett's Code, p. 692, secs. 1-13; Idem., pp. 696, 699; Acts of 1869, vol. 2, p. 462; Act of Feb. 8, 1868, secs. 1, 5, 7.)

2. Where an act of the legislature requires a tax to be levied by county justices or by city councilmen for the purpose of paying the debts of a county or State, the duty of levying such a tax is not discretionary, but is mandatory, and may be enforced by the courts.  (Anderson County Court v. Stone, 18 B. Mon., 852; Maddox v. Graham, 2 Met., 56.)

3. A corporation authorized by law to sue and be sued can enforce any right it may have in all courts, regardless of the character of its stockholders or whether it has any stockholders at all. (Bank of United States v. Planters' Bank of Georgia, 9 Wheat., 904; Briscoe v. Bank of Commonwealth, 11 Pet., 259; Jones v. Bank of Tennessee, 8 B. Mon., 122; Louisville Industrial School of Reform v. City of Louisville, 88 Ky., 594.)

H. S. BARKER, City Attorney.

1. The commissioners of the Sinking Fund of the city of Louisville can not interfere with the discretion of the general council as to what funds shall be provided for meeting the bonded indebtedness of the city.   On this matter the statute has clothed the general council with a complete and perfect discretion as to when it shall levy or omit to levy an *ad valorem* tax for the Sinking . Fund.   (Burnett's Code, p. 692, sec. 2; Idem., p. 695, sec. 14; Idem., pp. 701-2, sec. 36; Ky. Stats., sec. 2981, 3010, 3011; Clark, Sheriff, v. Louisville Water Co., 90 Ky., 590; Commonwealth ṿ. Todd, &c., 9 Bush, 713; McReynolds v. Smallhouse, 8 Bush, 45.)

2. The uncontradicted statements of the answer show that appellants have more property and quick assets than would meet and discharge all the bonds of the city.

3. The petition is defective in failing to state that the commissioners have not already sufficient funds to meet all their obligations.

JUDGE EASTIN delivered the opinion of the court.

This action was brought by appellant to compel appellees, who are members of the general council of the city of Louisville, to levy a tax of forty cents on the $100 of taxable prop-

erty in said city of Louisville for the benefit of the sinking fund of that city. A general demurrer to the petition was sustained by the court below, and the petition dismissed, and from that judgment this appeal is prosecuted.

The appellant is a corporation, created by an act of the legislature of Kentucky, approved March 9, 1867, providing, among other things, that "the mayor, the president of the board of aldermen for the time being, and three persons, to be chosen by the general council on joint ballot, as herein-after directed, and their successors in office, shall constitute the 'Commissioners of the Sinking Fund of the City of Louis-ville,' and by that name shall have corporate powers and existence, may sue and be sued, and do and perform all things necessary to execute the duties required and powers given them by this act."

By the terms of this act all the assets and income of the sinking fund of said city were vested in and placed under the control and management of appellant, and upon it was im-posed the duty of applying the funds so supplied to it, to the payment of such debts of the city as were made a charge upon the sinking fund, so far as the same could be so applied on fair terms, and, as to any surplus thereof, it was given power to invest the same in bonds of the city of Louisville or of the State of Kentucky, or in such stocks as should be approved by a vote of a majority of each board elect of the general council, by yeas and nays.

These provisions seem to indicate the general purposes, powers and duties of the corporation, as set forth in the act creating it; and the allegations of the petition, which under take to define its duties, are that it is "by law charged with the care, custody and disbursement of the funds provided by law to be raised by taxation and otherwise for the purpose

of paying the principal and interest of the city's bonded debt."

This then may, we think, be taken as a fair statement of the general duties of the appellant corporation and of the general purposes of its creation.

The question involved here, however, relates more particularly to its powers, and especially to the power it is here undertaking to exercise, through the aid of the chancellor, of compelling the legislative department of the municipal government to furnish it with the funds necessary to discharge maturing allegations of the city of Louisville which have been made a charge upon the assets under its control. Can the chancellor grant the relief sought and at the instance of appellant compel the general council to levy the tax for the benefit of the sinking fund?

It is alleged in the petition that by legislative enactment all the bonds for which the city of Louisville is primarily liable are made a charge upon the sinking fund of the city, and that appellant is chargeable with the payment of the annual interest thereon, and with the creation and maintenance of a sinking fund sufficient to pay the principal thereof at maturity; that this bonded debt now amounts to the sum of $8,815,000, on which the annual interest is $468,170, and that it is necessary, in order that appellant may comply with its obligations, that it should be provided in each year with a revenue sufficient to pay this interest, together with the expenses of conducting its business, and with an annual sum sufficient in the aggregate to meet the principal of the bonds at maturity. It is further alleged that, for the year 1894, the only tax levied for its benefit was the annual license tax provided for by the act of July 1, 1893, from which it was supposed that a revenue entirely sufficient for its pur-

pose would be derived, but which proved wholly inadequate, making it necessary for appellant to borrow from bank a large sum of money. The petition then alleges the fact that by various legislative acts and city ordinances under which the different gales of bonds were issued, the city council was authorized and, in some instances, required to levy a certain tax therein specified for the purpose of creating a sinking fund to provide for the payment of said bonds, which taxes, so authorized, amount to an annual levy of eighty-one cents on the $100 of taxable property; that appellant had brought to the attention of the general council the fact that the license tax, as levied for the year 1894, was wholly inadequate, and had requested said council to make a levy for the year 1895 of not less than forty cents on the $100 of taxable property, which levy it says is necessary, but that one board of the general council had already passed a levy ordinance for 1895, omitting any tax for the benefit of the sinking fund; that said ordinance would soon be acted upon by the other board, and that if passed there would be a very large deficit in the income of appellant for the year 1895, and that appellant would, therefore, be unable to discharge the obligations of the city of Louisville to its creditors.

In addition to the several ordinances and special acts passed at the time of the issue of each series of bonds, and either authorizing or directing the levy of a specified tax to meet the same, as set forth in the petition, counsel for appellant have quoted in their brief and seem to rely upon an act of March 15, 1869, entitled "An act to increase the resources of the sinking fund," in which it is provided as follows, to-wit: "The general council shall, in the month of April or May, 1869, and in one of the months of each succeeding year thereafter, levy a tax of forty cents on each $100 worth of such

real and personal property as may be taxed for city pur-
poses in said city, which shall be styled the 'sinking fund
tax,' and shall be in lieu of all taxes now levied for the pay-
ment of the bonded debt of the city other than that required
to be levied for the payment of the bonds issued to the Eliz-
abethtown & Paducah Railroad Company.

And by the fourth section of which act it is also provided
as follows, to-wit: "The resources of the sinking fund shall
not be diminished, but may be increased by the general coun-
cil."

These provisions of the act of 1869, it is claimed, are man-
datory upon the council, and its duty thereunder, it is said, is
purely ministerial, and one which the appellant, in its cor-
porate capacity and under its charter power, "to sue and be
sued," may enforce in this action by mandatory injunction.

Waiving, for the present, the question as to whether ap-
pellant, though for some purposes an independent and dis-
tinct corporation, and yet for other purposes a mere branch
or adjunct of the municipal government, could, in any case,
maintain an action to enforce the discharge by the legisla-
tive department of the city of an admitted ministerial duty,
it seems to us clear that the right asserted by appellant does
not exist in this case for the reason that the act of 1869 is
no longer in force. The legislature of Kentucky, which, by
that act, made it the duty of the city council to levy this an-
nual tax of forty cents on the $100 worth of property in lieu
of all other taxes for the payment of the bonded debt, and
which provided that the revenues of the sinking fund should
not be diminished but might be increased by the general
council, has, by the act of July 1, 1893, regulating the govern-
ment of cities of the first class, established an entirely differ-
ent system of taxation, and provided a wholly different

method for supplying the necessary revenues to the sinking
fund.  That this entire matter was within the control of the
legislature, and that it had the power to change the provi-
sions of the old law, we have no doubt, and that it has done
so is equally clear.

By the provisions of section 3011 of the Kentucky Stat-
utes, being part of the act of July 1, 1893, the general council
was empowered to provide for a very elaborate system of li-
cense taxes or fees upon almost every conceivable kind of
business carried on in the city of Louisville for the benefit of
the sinking fund, from which, as is alleged in the petition,
it was expected that a very large revenue would be derived.
And in section 2981, Kentucky Statutes, being part of the
same act, it is provided as follows, to-wit: "In the ordinance
fixing for any year the tax rate the general council shall sub-
divide its levy as follows: A levy for school, a levy for the
sinking fund, a levy for police purposes, a levy for the fire
department, a levy for street and sewer cleaning, a levy for
sprinkling streets, a levy for the construction of streets, a
levy for street repairs, a levy for the construction and repair
of sewers, a levy for the house of refuge, a levy for charit-
able institutions, a levy for parks, a levy for general pur-
poses, and a deficit tax.  *The general council may omit any of
the foregoing levies when not demanded by the public interests.*"

The authority thus given to the council to omit any of the
levies provided for "when not demanded by the public inter-
est," would seem to leave the question of levying or not levy-
ing a tax for the benefit of the sinking fund to the judgment
and the discretion of the council.  And the power conferred
upon it to provide a revenue by the license system would
seem to leave to the discretion of the council the question as
to how the bonded debt of the city shall be provided for,

whether by an *ad valorem* tax or by license taxes, or part by *ad valorem* and part by licenses.

Nor is it an answer to this to say, as contended by counsel for appellant, that section 3010, Kentucky Statutes, shows an intention on part of the legislature to leave the existing provisions of the law regulating the sinking fund undisturbed. The language of that section, so relied on, is: "The sinking fund, to pay the bonded debt of the city, is hereby continued as now established by law." This language clearly does continue the existence of the appellant corporation, but does not continue in force all the existing statutes regulating the raising of revenue for the benefit of the sinking fund. It is true that it follows after the section which gives the council the power and discretion to levy or not to levy an *ad valorem* tax for this purpose, but it is also true that it is immediately followed by the section which authorizes this very extensive system of license taxes from which it was expected that its principal revenue would be derived. So that, upon the principle contended for by counsel themselves, and in any view of the question, it seems quite clear that this last section of the statute, which deals directly with this question of providing a revenue for the sinking fund, must be taken as conclusive evidence of the fact that section 3010 does not mean that the statute of 1869, which provided for an *ad valorem* tax of forty cents on the $100 in lieu of all other taxes, was to be continued in force.

We are of the opinion, therefore, that the act of 1869, relied on for appellant, as well as the special acts passed at various dates at which the different series of bonds were issued, has been superseded by the provisions of the Kentucky Statutes referred to, and that under section 2981 of these statutes the council may, in its discretion, omit to levy

in any year an *ad valorem* tax for the benefit of the sinking fund.

If we are correct in this conclusion, it follows that this proceeding can not be maintained, and we might pass over entirely the question as to whether or not there is anything in the relations existing between these parties that would forbid the maintenance of this action.

It is to be observed, however, that while their functions are entirely distinct, yet the connection between appellant and appellees is peculiarly close and very delicate. Both are charged with responsible duties to the city. Appellees constitute the legislative department of the city and appellant is its most important financial agency. The president of the board of aldermen is also a member of the board of commissianers, and three of the other four members of this latter board are elected by the general council. The records of that board are subject at all times to inspection by any member or committee of the council; that board can not invest any of its funds in stocks without the approval of the council; it must make to the council monthly reports of its condition, and also an annual report, showing its disbursements for the year, with vouchers for the same; its members may be removed by the council for misfeasance or malfeasance, and the council must fix the compensation of its members. So far, then, as the relative obligations and duties existing between the parties themselves are concerned, they seem to be largely upon the appellant and in favor of appellees, and not calculated to suggest the right on part of the former to force upon the latter the discharge of an alleged duty unless that right be clearly and explicitly given it by the law.

Again, the purposes of appellant's creation seem to be few, though important, and to be well defined by the act

creating it.    It seems to us to be a part of the fiscal ma-
chinery of the municipal government, erected and adopted
for the convenience of the city in handling its bonded debt.
Certain parts of the revenues of the city are turned over to
it to be cared for, controlled and applied to the payment of
certain obligations of the city which are made a charge upon
it.    It has no duty in the matter of providing funds or rais-
ing revenues for this purpose, but must care for and faith-
fully apply to certain specified purposes the funds with
which it may be supplied by the city.    The debts to be paid
are not its own but the city's debts, and it is the duty of the
city to provide the means of payment.    It is true that after
these funds once reach its hands or come under its control
it has a certain sort of ownership of the same and can sue
for and recover the same if abstracted or wrongfully taken
or withheld from its possession.

But has it any right to demand either from the city itself
as a municipality, or from any separate and distinct depart-
ment of the city government, that money be supplied to it,
even though it has to be raised through the levy of a tax by
the legislative department of the city, with which to pay ob-
ligations of the city that ought to be paid by it, provided
only the city furnishes it with funds for the purpose?    We
do not think so.    Nor do we think that appellant is in any
such sense the representative of the holders of the city's
bonds or charged with the duty of paying them as to author-
ize it to demand that this tax be levied for the purpose indi-
cated, even though the bonded obligations of the city can not
be met at maturity.    Of course a holder of the city's bonds
which might be allowed to remain unpaid would have the
right to sue and compel payment from the city, but he would
have his remedy entirely independent of the sinking fund,

and might enforce his rights without invoking the aid of appellant.   And, while the purpose of appellant's creation was largely based upon a plan for the payment through it of these bondholders, yet it does not thereby acquire the right to provide for their payment by a proceeding of this kind, or by the exercise of the rights which belong to the bondholders.   Of course, such a condition of affairs as appellant seems to apprehend would be unfortunate and a serious calamity to a city whose credit has always been the best, and has, doubtless, been brought to that high standard by the sagacity, efficiency and integrity of those in charge of its sinking fund.   But there is no charge here that the general council of the city is acting fraudulently or even capriciously in refusing to levy this tax.   We have no reason to believe that it will not to its duty as it understands it, or that it will not, if it has the power and ability to do so, make proper provision to enable the city to meet all its just obligations.   But, as said above, the legislature has, in our opinion, whether wisely or unwisely, but within its legislative powers, entrusted to the discretion of the council the entire question of levying this tax upon the demand of the commissioners of the sinking fund.   That discretion can not be controlled by appellant.   If, as said above, a holder of the bonds of the city, as to which default has been made, should apply for relief in a proper case and in a proper manner the question would be a very different one.

For the reasons indicated the judgment of the lower court sustaining the demurrer and dismissing appellant's petition is affirmed.