CASE 62—ACTION BY CITY OF LOUISVILLE AGAINST R. W. WOOLEY AND OTHERS TO RECOVER TAXES.—JAN. 21.

# Woolley, &c. v. City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEALS. AFFIRMED.

TAXATION—SUIT FOR TAXES—PLEADING—SUBMISSION OF ACTION—CLERICAL MISPRISION—TAX BILLS—DUPLICATES—EVIDENCE—PRIMA FACIE EVIDENCE—CONSTITUTIONAL LAW—STATUTES—RES JUDICATA—LIMITATION—WRONGFUL ASSESSMENT—SPECIAL LEGISLATION—BOARD OF EQUALIZATION—COMMISSIONERS OF SINKING FUND—LIFE TENANT—REMAINDERMEN—MANNER OF SALE.

Held: 1. Where the issues have not been completed, though they should have been, the party in default as to time, is not entitled to a continuance, it not being shown that any advantage was taken of the defendants and it appearing that every allegation against them was controverted, and in such case it was

not error in submitting the case without waiting for the issues to be formally completed where it appears that the actions had been pending for a long time and the parties had had full time to prepare their case, and no one was prejudiced thereby.

2. To render a judgment before the action stood for trial is under Civil Code, sec. 517, a clerical misprision, but no motion having been made in the lower court to set the judgment aside, under Civil Code, sections 516, 518, the objection is not available in the court of appeals.

3. Kentucky Statutes, section 2996, providing that "each tax bill shall be authenticated by the assessor by his signature or a stamped *fac simile* thereof, and when so authenticated, it shall be *prima facie* proof that all steps have been taken to make it a binding tax bill for the amount and purposes, and against the person and property therein named, and this rule shall apply to the tax bills of 1885 and 1886 that have been so authenticated under the ordinance of the general council," is a valid statute, and the fact that the ordinances for the years 1885 and 1886 are not. filed and there is no proof that the provisions of the ordinances were complied with is immaterial, because the court must take. judicial knowledge of the ordinances of the city, as provided in Kentucky Statutes, section 2775.

4. When the genuineness of a tax bill is denied, the city, to make out its *prima facie* case, must show that the tax bills were made out and signed by the assessor as required by Kentucky Statutes, section 2996, supra, and when this is shown the *prima facie* case is made out as fully as if there had been no denial, and the burden then shifts to the defendant to show that the proper steps were not taken.

5. In this case, some of the original tax bills having been lost, by a consent order duplicate tax bills were substituted therefor, and such duplicates having been used in taking the depositions and treated by the court as part of the record, the fact that they were not marked "filed" by the clerk is not chargeable to appellee, and this court will treat them as part of the record. Where the original tax bill is lost we see no reason why the same effect should not be given to a duplicate of it made out and certified by the officer and proved by him to be a correct duplicate.

6. An order of injunction, made in a previous action between the parties hereto, which recites that "it is agreed and so ordered that the defendant, the city of Louisville, is hereby perpetually enjoined from asserting any claim for taxes in or to the property described in the petition prior to March 31, 1884," applies

only to the taxes levied prior to March 31, 1884, although it was entered on June 19, 1889.

7. Kentucky Statutes, section 2998, which is the act of May 12, 1884, is not unconstitutional in allowing interest on unpaid taxes, the giving of interest thereon is no more than a penalty for their non-payment, the validity of which has long been recognized by this court.

8. Kentucky Statutes, section 2986, providing that "no mistake in or omission of the right name of the owner or holder of the land or improvements liable to be assessed under the provisions of this act, shall impair any assessment thereof, if such land be designated in the books (required to be kept by the assessor by Kentucky Statutes, section 2985) by its corresponding number and block on the map, or if such improvement be there designated by the number and block of the land on which its rests, or if such lands and improvements be otherwise fully identified in said books," is not special or local legislation because it applies only to cities of the first class and the city of Louisville being the only city of the first class in the State, and there is no reason why the Legislature may not provide that irregularities in the assessment shall not avail the taxpayer to escape the payment of his public dues when there is enough in the assessment to show the property taxed.

9. Under act of March 9, 1867, and Kentucky Statutes, sections 3010, 3011 and 3024, creating and prescribing the duties of the board of commissioners of the sinking fund of the city of Louisville, and section 2979, providing that "all taxes already levied or imposed under existing laws, and not yet paid remain payable unless the contrary be hereafter provided," the taxes levied for the benefit of the sinking fund are in substance levied for the payment of the debts of the city, and the fact that they were made payable to the said commissioners, does not affect in any manner appellant's liability.

10. The fact that the board of equalization was not properly elected as required by Kentucky Statutes, section 2994, is unavailing to the appellants, as they do not show that they made any complaint of any assessment.

11. Where land was conveyed to Mrs. W. for life with remainder to her heirs, in a suit against her for taxes on such land, her children were not necessary parties, inasmuch as it could not be known who were her heirs until she died, and no cause of action accrued against them until her death.

12. Kentucky Statutes, section 2998, provides that "all tax bills, uncollected in whole or in part . . . shall be deemed a debt from such person (owing same) to the city arising as by contract, and

Woolley, &c. v. City of Louisville.

may be enforced as such by all remedies given for the recovery of debt in any court competent for that purpose;" section 3005 provides that "the action herein authorized and the judgment and subsequent proceedings therein . . . shall be conducted in all respects like suits upon liens arising from contract, and the court shall have jurisdiction of all suits for taxes irrespective of amount," and section 3006 provides that "from the beginning of the action a lien for each tax bill assessed against the same owner or set of owners shall also arise upon every piece of land or improvement still owned by him or them, with a view to the sale of less than all the pieces for all the tax bills subject to the marshalling of burdens as against third parties;" under these provisions the chancellor, having a broad discretion in enforcing tax liens, did not err in directing a sale of so many of the lots as might be necessary to make the judgment; which was really less opressive on the defendants than to order parts of the lots to be sold.

13. Kentucky Statutes, section 3007, relating to the collection of taxes due by infants or persons of unsound mind, providing that land owned by them, shall not be sold . . . "so as to defeat the reversions, remainders, or future estates, while any future estates are outstanding, unless the reversioners or remaindermen are ascertained and are of full age," has no application to sales where the remaindermen are ascertained and are of full age.

14. In an action by a city for taxes on property in which there were interests in remainder, the court in its decree properly "reserved power over the distribution of the fund arising from the sale ordered to the parties respectively entitled thereto," inasmuch as the city had a lien on the remainder as well as on the particular estate, and if it shall turn out when the sale is made, that any injustice is done the remaindermen, the court can adjust this matter between them and the life tenant.

R. W. WOOLLEY and H. M. LANE, for appellants.

H. L. STONE and JOHN C. RUSSELL, for appellees.

There being no brief in the record by appellee, and those filed by appellant being so voluminous, containing hundreds of pages, and not classified and authorities cited under the appropriate heading as required by rule 16 of the court of appeals, the reporter has deemed it best not to undertake to classify appellant's briefs, especially as the points relied on are set out in the opinion of the court following.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Mary J. Woolley, owned a number of lots in the city of Louisville, and these actions were instituted to enforce the lien of the city for taxes on the property for the years 1885-1900, inclusive. She died on February 2, 1897, leaving surviving her, her husband and two daughters, who are the appellants herein. The first suit (No. 3,140) was filed May 26, 1888, on the taxes for the years 1885-88, inclusive. On June 18, 1888, the defendants filed a demurrer to the petition, and no further steps appear to have been taken until August 19, 1891, when they filed their answer. Nothing further was done in the case until June 30, 1900, when the plaintiff filed an amended petition, setting up the death of Mrs. Woolley. The property was assessed in the name of Mary J. Woolley. She was sued in this name, and also answered in the name of Mary E. Woolley. As we understand the record, her maiden name was Mary E. Johnston, and in this way her name was sometimes written "Mary E. Woolley," and sometimes "Mary J. Woolley." As more than three years had elapsed after her death, there was no revivor of the case against the children, but the court held that it might proceed against her surviving husband, who was a party to the action originally, and that his interest in the land might be subjected to the taxes without revivor. A reply was filed to the answer, and after various amendments to the pleadings the issues were made up. The second action, known as "No. 4,992," was filed August 8, 1894, to recover for the taxes for the years 1889-94, inclusive. The defendants filed a demurrer to the petition on September 12, 1894. The demurrer was passed from time to time. The plaintiff amended its petition, and on April 14, 1896, the defendants filed answer. After this in some way the papers of the case were lost, and nothing was done until

March 12, 1898, when the plaintiff tendered an amended petition, setting up the death of Mrs. Woolley, and praying a revivor. The court held the application to be too late, and refused to revive the action, but on appeal to this court, the judgment dismissing the action was reversed. 22 R., 405, 57 S. W., 499. Among other things, a consent order was entered, filing a substitute for the original petition, also duplicates of the tax bills sued on, "to have the same force and effect as the original petition and original tax bills," and the action was dismissed without prejudice as to the taxes for the years 1893 and 1894. On the return of the case from this court an answer was filed to the amended and substituted petition, to which on November 24, 1900, the plaintiff filed a reply. The third action, known as "No. 5,040," was filed on August 16, 1894, to recover the taxes for the same years as in No. 4,992, but on other property, which was assessed in the name of R. W. Woolley, trustee for Mary E. Woolley. The defendants filed a demurrer to the petition, as in the other cases. The plaintiff filed an amended petition, and on April 14, 1896, the defendants filed answer. Nothing further was done, as in the second case, until after the death of Mrs. Woolley, when a similar amended petition was tendered, and, the then record being lost, a similar substitute petition was filed, and duplicates of the tax bills sued on, by a like consent order. The action was dismissed without prejudice as to the taxes for the years 1893 and 1894. There was the same ruling as to revivor, appeal to this court, and reversal, as in the second case. A reply was filed to the answer, and various other pleadings were filed, making up the issue. On July 14, 1898, the city filed five actions, numbered 18,257, 18,258, 18,259, 18,261, and 18,262, for certain taxes for the year 1897, and

garnished appellant's tenant, besides seeking to enforce a
lien on the land. In each of these cases the answers were
filed, and some other steps taken. On August 16, 1898, the
city filed two other suits (Nos. 18,534 and 18,535) to re-
cover for the taxes for the years 1893-98. Certain lien-
holders on the property were also made defendants to the
petition. The defendants filed answer on June 24, 1899.
On November 17, 1900, the cases were consolidated, and on
January 3, 1901, the defendants filed an amended answer
of twenty-four paragraphs in the clerk's office. On March
2, 1901, the plaintiff filed an amended petition in the con-
solidated cases, setting up, among other things, taxes for
the years 1899-1900. On March 23, 1900, the defendants
filed answer to this amended petition. The court struck
from the file the amended answer filed in the clerk's office
on February 16th, and refused leave to the defendants to
file it of record. On April 16th the plaintiff filed a reply
to the answer to the amended petition, and on the 29th
the defendants filed a rejoinder. On May 25th the defend-
ants filed an amended answer, and on June 20th the court
ordered that the amended answer filed on May 25th be con-
troverted of record, and should not delay the trial of the
case. The court also struck from the files the defendants'
rejoinder of April 29th, and the actions were submitted.
To all of which the defendants objected and excepted. The
court gave judgment in favor of the city, and the defendants
have appealed. A great number of grounds for reversal
are relied on:

1. The actions were submitted before they regularly stood
for trial.

As between the city and the defendants, the issues were
fully made up before its amended petition was filed, on
March 2d. The answer to this amended petition, with

plaintiff's reply thereto, it seems to us, made up the issues completely. Certainly there was no new matter brought out in this pleading which was not covered by the pleadings filed in the consolidated actions, and the court did not abuse a sound discretion in striking from the files the pleadings referred to, which, so far as material, merely reiterated what had been gone over. We are unable to perceive that there was any issue of fact made with either of the lienholders, the Louisville Trust Company, or the Fidelity Trust & Safety Vault Company. The actions had been pending for a long time. The parties had had very full opportunity to prepare their cases, and the court did not abuse a sound discretion in submitting them. Where the issues have not been properly completed for the requisite time, though they should have been, the party in default as to time is not entitled to a continuance. Civ. Code, section 364. We fail to see that the defendants were in any wise prejudiced by the submission. It is not shown that they were taken at any disadvantage or deprived of any proof. Every allegation against them was controverted. "The court must, in every stage of an action, disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Civ. Code, section 134. To render judgment before the action stood for trial under the Code is a clerical misprision. The court has power after the expiration of the term to vacate or modify a judgment for a clerical misprision. Civ. Code, sections 516-518. And no judgment which can be set aside or modified by the court that rendered it, upon motion made after the term in which it was rendered, can be reversed by this court until a motion to set it aside has been made in the inferior court and over-

ruled. Civ. Code, section 763. There has been no motion to set aside the judgment in the lower court, and this objection, if meritorious, is not now available.

2. The allegations of the various petitions were all denied, and, there being no proof to sustain them, the judgment is erroneous.

In section 2996, Kentucky Statutes, it is enacted concerning tax bills: "Each bill shall be authenticated by the assessor by his signature, or a stamped fac simile thereof, and when so authenticated, it shall be *prima facie* proof that all steps have been taken to make it a binding tax bill for the amounts and purposes and against the person and property therein named or described; and this rule of evidence shall apply to the tax bills of 1885 and 1886 that have been so authenticated under the ordinance of the general council." The validity of this statute was upheld in City of Louisville v. Johnson, 95 Ky., 254, 15 R., 615 (24 S. W., 875), and has been recognized in many subsequent cases. In certifying the original transcript the clerk stated that certain of the tax bills referred to in the petition, and the duplicate tax bills named in the consent orders above referred to, were not filed. But under a *certiorari* from this court he has sent up copies of these papers, with the following certificate: "I, John H. Page, clerk of the Jefferson circuit court, county and State aforenamed, do hereby certify that the papers attached hereto are true and correct copies of what purport to be, and evidently are, copies of the tax bills, or duplicates thereof, for the years 1889, 1890, 1891 and 1892, filed with the substituted petition in case No. 4,992, City of Louisville, Plaintiff, v. R. W. Woolley *et al.*, Defendants, said to be marked 'Exhibits No. 1 to 56,' inclusive. Said exhibits are and have been among the papers of this action, though they are not

marked as stated, nor are they marked 'Filed.'" Not only were the substituted tax bills filed by a consent order, but they were used in taking depositions, and were evidently treated by the circuit court as part of the record. The only thing lacking is that the clerk failed to mark the papers "Filed," as he should have done. This omission of his duty is not chargeable to appellee, nor are its rights affected thereby. We must therefore treat the papers as part of the transcript. Day & Congleton Lumber Co. v. Mack, Stradler & Co., 24 R., 640 (69 S. W., 712). The case of Railroad Co. v. Mayfield, 18 R., 224 (35 S. W., 924), was entirely different. There no order of court was made filing the pleading. While there was no order of the court filing the original tax bills, it is stated in the pleadings that they are filed therewith, and this allegation is uncontroverted, and no objection was made in the trial court on the ground that the exhibits were not filed. We must therefore assume that the statements of the pleading are true. The exhibits are certified by the assessor as provided in the statute, and, although the fact is denied by the answer, the authenticity of the certificate is established by the proof. The fact that the ordinances for the years 1885 and 1886, or copies of them, are not filed, and that there is no proof that the provisions of these ordinances were complied with by the assessor, is immaterial, because the court must take judicial knowledge of the ordinances of the city, and we find them in the biennial publication required by the statute. Kentucky Statutes, sections 2761, 2775. When the genuineness of the tax bill is denied, the city, to make out its *prima facie* case, must show that the tax bills were made out and signed by the assessor. City of Louisville v. Kimbel, 23 R., 1824 (66 S. W., 608). But when this is shown the *prima facie* case is made out as fully as if there had

been no denial of the regularity of the tax bills, and it is unnecessary for the city to show that all the steps required by the statute in the levying of the tax were taken. The burden then shifts to the defendant to show that the proper steps were not taken. The duplicate tax bills were by the terms of the consent order given the same effect as the original bills. But aside from this, where the original bill has been lost the assessor may make out another bill from his record, and certify it as provided in the statute, and it will make out a *prima facie* case for the city as fully as the one first made out. There is nothing in the language of the statute limiting its operation to the bill first made out by the assessor, and certified by him. The legislative purpose was to make the bills duly authenticated by the assessor over his signature, or a stamped fac simile thereof, *prima facie* evidence. It is the official certificate of the officer that gives the bill this character, and when the original is lost we see no reason why the same effect should not be given to a duplicate of it made out and certified by the officers and approved by him to be a correct duplicate. We therefore conclude that the city made a *prima facie* case by the tax bills referred to; no proof being taken by the defendants showing irregularities in the proceeding, or to sustain the affirmative defenses made in regard thereto.

3. The taxes for 1885 and 1886 were barred by a judgment in a previous action between the parties.

That judgment is in these words, as admitted by the pleadings: "It is agreed, and so ordered, that the defendant, the city of Louisville, be, and is hereby, perpetually enjoined from asserting any claim for taxes in, on, or to the property described in the petition prior to March 31, 1884—being the day on which the petition was filed herein—and the plaintiffs shall recover their costs herein." This

judgment, by its terms, applies only to the taxes levied prior to March 31, 1884, and not to those for the years 1885 and 1886, or any subsequent year, although it was entered on June 19, 1889.

4. Suit No. 3,140 not having been prosecuted with diligence for more than five years, limitation bars the taxes therein sued for.

This precise question was considered and determined otherwise in City of Louisville v. Meglemry, 107 Ky., 122 (21 R., 751), (52 S. W., 1052).

5. That action not having been revived against the heirs of Mary J. Woolley in proper time, there can be no judgment subjecting the life estate of her husband, Robert W. Woolley, to the payment of the taxes sued for, although he was a party to the action from the beginning.

In City of Louisville v. Woolley, 108 Ky., 691 (22 R., 405), (57 S. W., 499), it was held that no revivor was necessary against him, and that his life estate could be subjected to the payment of the taxes. In that case it was further held that actions Nos. 4,992 and 5,040 might properly be revived against the children of Mrs. Woolley. We regard both these questions as settled by the decision in that case, and not open now to discussion.

6. Section 2998, Kentucky Statutes, in so far as it allows interest on taxes unpaid at 6 per centum per annum, is unconstitutional and void.

This provision is taken from the act of May 12, 1884 (2 Sess. Acts 1883-84, p. 1274), and its validity has often been recognized by this court. Fonda v. City of Louisville, 20 R., 1652 (49 S. W., 785); Crecilius v. City of Louisville, 20 R., 1551 (49 S. W., 547); Powell v. City of Louisville, 21 R., 554 (52 S. W., 798; Louisville Bridge Co. v. City of Louisville, 23 R., 1655 (65 S. W., 814). While taxes do not bear interest

unless it is so provided by statute (Louisville & N. R. Co. v. Commonwealth, 89 Ky., 538; 12 S. W., 1064), the imposition of penalties for the nonpayment of taxes is everywhere sustained, and the giving of interest on unpaid taxes is no more than a penalty for their nonpayment. In Walston v. City of Louisville, 23 R., 1852 (66 S. W., 385), this precise question was determined. The court said: "Under the Constitution the same rate of taxation must prevail in all cities of the same class, the same time for payment must be provided, and the same penalties imposed for the nonpayment of taxes. To require the payment of interest on past-due tax bills is somewhat in the nature of a penalty. If not, then it is compensation for indulgence in the payment of taxes. It is as much of a general law to impose a penalty for the nonpayment of taxes, or to require the payment of interest on past-due tax bills, in cities of a class, as it is to provide that taxes shall be levied and collected therein. It is a governmental function to impose taxes, and it is equally so to prescribe the method of their collection, and the penalties for nonpayment." How taxes shall be levied, how their collection shall be enforced, and what penalties may be imposed upon delinquents in the several classes of cities, is a matter of legislative discretion. There is nothing in the Constitution forbidding different regulations, as the necessities of the case may require, in different classes of cities. Laws regulating the subject are not local or special legislation forbidden by the Constitution, although there is now only one city in the first class, for when any other city is placed in this class the legislation would apply to it; and, were the rule otherwise, there could be no adequate legislation for a class of cities if at the time there was only one city in that class.

7. There can be no recovery of a tax based on an assess-

ment made under the provisions of the present act or the old charter, unless such assessment is made to and in the name of and against the person as provided in the act.

The act requires the assessor to keep books in which he shall cause to be entered the names of all persons who are the owners or holders of land, and the number and block of each of his lots, according to the maps in his office. Kentucky Statutes, section 2985. It is further enacted: "No mistake in or omission of the right name of the owner or holder of the land or improvements liable to be assessed, under the provisions of this act, shall impair any assessment thereof, if such land be designated in said books by its corresponding number and block on said map; or if such improvement be there designated by the number and block of the land on which it rests; or if such lands and improvements be otherwise fully identified in said books." Section 2986. It is earnestly insisted that this statute is invalid, as local and special legislation, and much force is given to the fact that in the fore part of the section quoted these words are used: "Any lot of land which is not now designated by a number in the assessor's book." It is urged that by the use of the word "now," as well as from the fact that this provision was brought over from the old charter, the Legislature had in mind only the city of Louisville. But although this may be true, still the fact is that the act applies to cities of the first class, whether now in that class or hereafter coming into it; and, as said, in no other way could the Legislature provide for the government of a city when no other city of its class is in the State, than by a general law. The Constitution, by section 156, requires the Legislature to divide the cities of the State into six classes, and assign to the first class cities with a population of 100,000 or more. As long as there is only one

city of 100,000 population in the State, there can be but one city of the first class, but in the meantime the Legislature must provide by general law for the government of cities of the first class. The owner of property must know whether he has paid his taxes or not, and when he is sued for the payment of the taxes on his property there is no reason that the Legislature may not provide that irregularities in the assessment shall not avail him to escape the payment of his public dues, when there is enough in the assessment to show the property taxed. Some of the property in the case before us was assessed in the name of R. W. Woolley, trustee, some in the name of Mary E. Woolley, and some of it, after her death, in his name and the children's. Any of these assessments were sufficient, under the statute; the property being plainly identified by the number of the lot and block as marked on the assessor's maps, all of which is shown by the proof. Board of Councilmen of Frankfort v. Farmers' Bank, 108 Ky., 766 (22 R., 1738), (61 S. W., 458).

8. Section 2998, Kentucky Statutes, in so far as it allows taxes to be collected by suit in cities of the first class, is special and local legislation, and unconstitutional.

Similar provisions are made for suits to collect taxes, and for interest on them, in other classes of cities. See Kentucky Statutes, sections 3187, 3396, 3546, 3644. The constitutionality of these statutes has often been recognized by this court. Louisville Bridge Co. v. City of Louisville, *supra;* Board of Councilmen of Frankfort v. Farmers' Bank, *supra.*

9. The corporation known as the "Commissioners of the Sinking Fund of the City of Louisville" no longer exists, and the taxes levied for its benefit can not be collected.

The original act creating the board of commissioners of

the city of Louisville became a law on March 9, 1867; and
by section 3010, Kentucky Statutes, it is provided: "The
sinking fund to pay the bonded debt of the city is hereby
continued as established by law.  Whenever it is apparent
to the board of commissioners of the sinking fund of any
city of the first class that the revenue and available assets
of said sinking fund will be insufficient to pay, when due,
any future maturing bonds of said city then issued and
chargeable to said sinking fund, without unduly impairing
the assets of the sinking fund, and the said commissioners
of the sinking fund shall certify this fact to the general
council of said city," etc.  In sections 3011-3024 other du-
ties of the sinking fund commissioners are prescribed.  By
section 2979 it is provided: "All taxes already levied or
imposed under existing laws and not yet paid remain pay-
able, unless the contrary be hereinafter provided."  In a
number of cases decided since this act was passed, the
existence of the sinking fund commissioners of the city
was upheld or recognized.  Farson, Leach & Co. v. Board
of Commissioners of Sinking Fund, 97 Ky., 119 (16 R.,
856), (30 S. W., 17); Commissioners v. Grainger, 98 Ky.,
319 (17 R., 901), (32 S. W., 954); Same v. Zimmerman,
101 Ky., 432 (19 R., 689), (41 S. W., 428).  There was an
obligation on the city to pay its debts.  The taxes levied
for the benefit of the sinking fund are, in substance, levied
for the payment of the debts; and the fact that they were
made payable to the sinking fund commission does not af-
fect in any manner appellant's liability, for the council was
required to make a levy to meet the obligations of the city,
and the form in which the levy was made did not prejudice
appellants.

10. There was no election by the board of aldermen of a
board of equalization by a *viva voce* vote.

Appellants do not show that they made complaint of any assessment. Section 2994, Kentucky Statutes, reads: "If in any year a legal board of equalization is not elected or fails to meet or fails otherwise to perform any essential act, or if in any year the assessment books should not remain open for the requisite time, the tax bills shall not thereby become void; but when any tax payer in such a case complains of the assessment upon him such a board shall then be chosen in the manner indicated or the board theretofore chosen shall meet, as the case may be, and hear all complaint in the manner stated; and the collection of tax bills from those so complaining shall be suspended till the board has heard and disposed of their complaints." Under this statute the objection that the board of equalization was not properly elected is unavailing. Crecelius v. City of Louisville, supra; Fonda v. City of Louisville, supra; Powell v. Same, supra.

11. The court sustained a demurrer to the petitions in actions Nos. 18,257, 18,258, 18,262 and 18,534, but gave judgment on these petitions without amendment.

In actions Nos. 18,257, 18,258 and 18,262, there was an order filing a demurrer of the defendants to the first, second and third paragraphs of the petition. The demurrer was sustained in the first and second paragraphs, and overruled as to the third. Plaintiff was given leave to amend the petitions and reparagraph the same on the face of the papers. The three cases were then consolidated. The petitions as copied in the transcript are in one paragraph, and really set out but one cause of action. We must assume, therefore, that the plaintiff amended its petitions by striking out so much of them as divided them into paragraphs. After the consolidation there was an order entered overruling the defendants' demurrer to the petition. This or-

der should be treated as made in the consolidated actions, as these cases were consolidated with the other cases, and, after the consolidation, pleadings going to the merits were filed both by the defendants and by the plaintiff. In action No. 18,534 the defendants' demurrer to the petition was overruled.

12. Mrs. Woolley owned only a life estate in certain lots, and limitation bars the remainderman.

The deed under which these lots were held is not produced in evidence, although the condition of the title was denied. R. W. Woolley stated that the title was conveyed by James C. Johnston to Mrs. Woolley for life, who then had had no children, with remainder to her heirs. It could not be known who would be the heirs of Mrs. Woolley until she died, and therefore her children were not necessary parties to the suit in her lifetime. They were made parties soon after her death, and the cause of action against them did not accrue until her death.

13. The court erred in prescribing the manner in which the property should be sold.

Our statutes confer upon the chancellor very broad discretion in enforcing tax liens. It is provided: "All tax bills uncollected in whole or in part . . . shall be deemed a debt from such person to said city arising as by contract and may be enforced as such by all remedies given for the recovery of debt in any court of the Commonwealth otherwise competent for that purpose." Kentucky Statutes, section 2998. "The action herein authorized and the judgment and subsequent proceedings therein, except as hereinafter excepted, shall be conducted in all respects like suits upon liens arising from contracts, and the court shall have jurisdiction of all suits for taxes irrespective of amount." Section 3005. "From the beginning of the ac-

tion a lien for each tax bill assessed against the same
owner or set of joint owners shall also arise upon every
piece of land or improvement still owned by him or them
with a view to the sale of less than all the
pieces for all the tax bills subject to the mar-
shalling of burdens as against third parties, as the
rules of equity may require." Section 3006. Under
these provisions the court did not err in directing a sale
of so many of the lots as might be necessary to make the
judgment, which was really less oppressive on the defend-
ants than to order parts of the lots to be sold. Section
3007, Kentucky Statutes, relates to the collection of taxes
due by infants and persons of unsound mind, and is prop-
erly thus headed by the editors. It reads as follows: "The
goods of infants, or persons judicially found to be of un-
sound mind, shall not be distrained for the taxes assessed
on their lands or improvements; nor shall their lands, dur-
ing their disability, be sold for less than two-thirds of their
appraised value on any judgment of sale rendered for taxes
and cost alone, when these lands or improvements have
come to them through descent, distribution or devise, or the
gift of settlement of some person then deceased, or have
belonged to persons of unsound mind before they became
such; nor shall, for taxes chargeable to the owner of the
particular estate, the entire estate be sold for taxes and
costs alone at less than two-thirds of the appraised value, so
as to defeat the reversions, remainders, or future estates
while any future estates are outstanding, unless the rever-
sioners or remaindermen are ascertained and are of full age;
nor shall such entire estates be put up to sale, unless the
particular estate of the taxpayer has first been put up and
has failed to bring the amount of the taxes and costs." The
section first provides as to the goods of infants and per-

Woolley, &c. v. City of Louisville.

sons judicially found to be of unsound mind; then as to their lands coming to them from some person who was of unsound mind or is deceased. It then takes up the state of case where these persons own the remainder, and another the particular estate, and forbids a sale at less than two-thirds of the appraised value where the remaindermen are not ascertained or of full age, and then provides that such estate (that is, those estates as are referred to in the last clause, in which the reversioners or remaindermen are not ascertained or of full age) must not be put up to sale unless the particular estate has first been put up and has failed to bring the amount of the taxes. In other words, where the remaindermen are not ascertained or of full age the entire estate can not be sold for taxes and costs alone at less than two-thirds of its appraised value, and the particular estate of the taxpayer must be first exhausted, and fail to bring the amount of the taxes, before the estate of the remaindermen is sold. The section has no application to sales where the remaindermen are ascertained and are of full age.

At the conclusion of the judgment is this clause: "The court reserves power over the distribution of the fund arising from the sale as above ordered to the parties respectively entitled thereto." If it shall turn out, when the sale is made, that any injustice is done the remaindermen, the court can adjust this matter between them and the life tenant, and direct him to contribute to them as the ends of justice require. But the city has a lien upon the remainder as well as the particular estate of the lots ordered to be sold as the property of the life tenant and the remaindermen, and, in view of all the facts, we do not see that any substantial injustice has been done any of the parties by the decree complained of. It is true that to

throw 15 years' taxes upon the property at one time is to place upon it a great burden; but property is itself only the creature of civilized society, and taxes are the contributions made by property owners to society for its protection which they enjoy. He who enjoys the protection of society in the security of his property, without discharging his part of the common burden of maintaining the social system, violates the constitutional rule that taxes shall be uniform and equal. He not only reaps where he has not sown, but he places upon others the burden which his property ought to bear, for, as the social system must be maintained, others must pay the part that in right should be paid by him. There is therefore only apparent hardship in the judgment and no real injustice. It is shown by the proof that no taxes have been paid on appellants' property since about the year 1875, although, as stated, it was adjudged that the city be enjoined from collecting taxes prior to March 31, 1884.

14. Certain paragraphs of the petitions were defective. These defects were cured by the subsequent leadings, and by the proceedings had in the consolidated action.

Judgment affirmed.

Judge Barker not sitting.