CASE 120—ACTION BY THE CITY OF LOUISVILLE AGAINST SOPHIA J. WOOLLEY AND OTHERS TO ENFORCE A TAX LIEN.—NOVEMBER 2.

# Woolley, &c. v. City of Louisville.

|118 897|
|120 144|

| 118 897|
| f129 492|

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION, NO. 1— SHACKELFORD MILLER, JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. REVERSED.

TAXES—JUDGMENT—PROVISION FOR SALE—PAYMENT—SATISFACTION.

Though a judgment adjudging taxes for certain years to be a lien on a life estate in certain lands, and taxes for other years to be a lien on both the life estate and the remainder, and providing for sale for satisfaction thereof, be affirmed, the trial court should on payment into court by the remaindermen of the amount of taxes adjudge a lien on both estates, and on motion therefor by the remaindermen, satisfy the judgment as to such taxes, and permit a sale of the life estate only for the other taxes.

W. O. HARRIS AND HUSTON QUIN, FOR APPELLANTS.

### POINTS AND AUTHORITIES CITED.

1. One who pays a judgment against him in whole or in part is entitled to have satisfaction of it entered, on motion, and to a recall of any execution or order of sale. 3 Bl. Com. chap., 25, p. 405; Chambers v. Garvin, 13 B. M., 236; Freeman on Judgments, sec. 95; Black on Judgments, sec. 297; Long v. Shackelford, 25 Miss., 559; Sandburg v. Papineau, 81 Ill., 446; 8 Ency Pl. & Pr., 464; 19 Ency. Pl. & Pr., 126; Saltmarsh v. Bower, 34 Ala., 613; Smock v. Dade, 6 Rand., 639; 16 Am. Dec., 780; B. & O. R. R. v. Vanderwerker, 33 W. Va., 191; Smith v. Miller, 66 Texas, 78; Lockhart v. McElroy, 4 Ala., 572; Briggs v. Thompson, 25 Johnson, 294; Shaw v. Dwight, 27 N. Y., 244; Ludington v. Peck, 2 Conn., 700; Brackett v. Winston, 17 Mass., 152; Gorsuch v. Thomas, 57 Md., 339.

2. In Kentucky payment is *ipso facto* a satisfaction, and revests the legal title without action of the court. Armitage v. Wickliffe, 12 B. M., 438; Brown v. VanCleve, 86 Ky., 387.

3. A sale under decree for an amount substantially in excess of the debt is irregular and an order confirming it is erroneous. Blakey v. Abert, 1 Dana, 185; Dawson v. Litsey, 10 Bush, 408.

4. Notice should have been given of the filing of the mandate on the former appeal. Mays v. Spalding, 17 Ky. Law Rep., 1124.

5. Section 761, of the Civil Code, which provides for the filing in vacation of mandates of affirmance from this court, and the issuing of writs of execution thereon as if filed in court, applies only to the collection of judgments by ordinary execution. and not to the enforcement of a decree for the sale of real estate by a commissioner to satisfy a judgment. Mayes v. Spalding, 17 Rep., 1124.

HENRY L. STONE, CITY ATTORNEY, FOR APPELLEE.

### POINTS DISCUSSED AND MAINTAINED.

1. The order of July 20, 1903, appealed from in the first appeal, was not a final order, and that appeal should be dismissed.

2. Appellants were not entitled to have an order of satisfaction entered as asked for in their motion.

3. The amount paid into court was not the full amount of appellee's lien claims, with interest and costs, against the remainder interests of appellants.

4. The court below properly overruled the motion of appellants

and the mortgage lien-holders for the court to direct the commissioner not to execute their judgments.

5. The payment into court of the sum claimed to be the amount of appellee's lien claims against appellant's remainder interests afforded no cause for preventing the sale as made.

6. The authorities cited by appellant's counsel are inapplicable to the facts in this case.

7. Appellants had no interest in certain lots, and were, in no event, prejudiced by the confirmation of the report of sale thereof.

8. Appellants have not been deprived of their property, without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

## AUTHORITIES CITED.

1. Appellants were not entitled to an order of satisfaction entered as asked for in their motion. Freeman on Judgments, sec. 30; Bondurant v. Apperson, 4 Met., 32; Hanson v. Boyer, 4 Met., 107; Worthington v. Brooks-Waterfield Co., 20 R., 1432; Harris v. Tuttle, 23 R., 220.

2. The payment into court of the sum claimed to be the amount of appellee's lien claims against appellants' remainder interests afforded no cause for preventing the sale as made. 24 R., Part 2, pp. 1367-8; Freeman on Judgments, sec. 96; Sibbald v. United States, 12 Peters, 492 (37 Co-operative Ed., p. 491); Kelly v. Keizer, 3 A. K. Mar., 268; McClannahan's Heirs v. Henderson's Heirs, 1 T. B. Mon., 261; Phillips v. Phillips, 2 R., 217; Kimbrough v. Harbett, 22 R., 1578; Black on Judgments, sec. 1014; Long v. Shackelford, 25 Miss., 559.

3. The authorities cited by appellant's counsel are inapplicable to the facts in this case. Black on Judgments, sec. 95; Section 393, Civil Code; B. & O. R. R. Co., v. Vanderwerker, 33 W. Va., 191; Smith v. Miller, 66 Texas, 74; Manker v. Sine, 47 Neb., 736; Briggs v. Thompson, 20 Johns., 294; Shaw v. Dwight, 27 N. Y., 244; Luddington v. Peck, 2 Conn., 700; Brackett v. Winston, 17 Mass., 158; Armitage v. Wickliffe, 12 B. M., 496; Chambers and Garvin v. Neal, 13 B. M., 256.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Mary J. Woolley owned a number of lots in the city of Louisville. The city of Louisville instituted these suits against her and her husband, R. W. Woolley, to enforce the

lien of the city for taxes. Mrs. Woolley died in the year
1897, leaving surviving her two daughters, Sophia J. Wool-
ley and Mary J. Fenley. The cases progressed to judgment,
and it was determined in the circuit court that for the taxes
for the years 1885-1888, inclusive, the city had a lien only
on the life estate of R. W. Woolley; that for the taxes for
the years 1889-1900, inclusive, the city had a lien on both the
life estate of R. W. Woolley and the remainder interest of
the two children. A sale was ordered to satisfy the tax
liens and certain mortgages on the property. From this
judgment an appeal was taken to this court, and the judg-
ment was affirmed. See Woolley v. City of Louisville, 114 Ky.,
556, 71 S. W., 893, 24 Ky. Law Rep., 1357. The total of the tax-
es, interest and costs was $33,886.02. Of this, $23,575.01 was
a lien on both the life estate and the remainder, being the
taxes for the years 1889-1900, and $10,311.01 were a lien
only on the life estate, being the taxes for the years 1885-
1888. On the return of the case to the circuit court the
remaindermen tendered to the city the sum of $23,575.01,
the amount adjudged against both the life estate and the
remainder, in satisfaction of the judgment against their
property. The tender was declined. They then paid the
money into court, and moved the court to make an order of
satisfaction of the judgment as to them. The court over-
ruled the motion, and the commissioner then proceeded to
sell a number of the lots by the direction of the city attor-
ney; the gross amount of the sales being something over
$40,000. The entire property was sold; the purpose being
out of the proceeds to arrive at the value of the life estate,
and apply this much of the proceeds to the satisfaction of
the taxes adjudged against the interest of the life tenant.
Exceptions were filed to the sale, which were overruled, and
the remaindermen have appealed.

It is insisted for the city that, the judgment theretofore entered having been affirmed by this court, the circuit court was powerless to alter or modify it in any way, and could do nothing but execute the decree according to its terms, and that this was done by the sale made by the master commissioner. It is insisted for the appellants that, as they had paid into court all that was adjudged against their property, the court should have entered satisfaction as to them, and that no sale of their property could thereafter be properly made. The rule is that after a judgment has become final the court rendering it possesses no power at a subsequent term to set it aside or modify it, and has no further control over the case, except for the purpose of executing the judgment. Kelly v. Keizer, 3 A. K. Marsh, 268; McClanahan's Heirs v. Henderson's Heirs, 1 T. B. Mon., 261. But while the court can not at a subsequent term modify a judgment previously rendered, it may, in executing the judgment, make such orders as subsequent events render necessary for the proper execution of the judgment according to justice and right. Thus, if property is ordered to be sold on a certain day, and the sale is not then made, the court may order the sale to be made on another day, or if the person who is ordered to make it can not act, or if the sale can not be made at the place named in the judgment, he may name another officer to make the sale, or fix another place for it. So, if part of the judgment is paid, he may direct the sale to be made for the part remaining unpaid. Thus, if the land of A. and B. is ordered to be sold to pay a certain debt, and A. afterwards pays his part of the debt, the court may direct the commissioner to sell first B.'s land to pay B.'s part of the debt, or if, before the sale, B. is garnisheed by a creditor of the plaintiff and compelled to pay the debt, or a part of it, to the plaintiff in an attach-

ment proceeding, the court may order the proper credit to be given, and a sale of the land to be had only for the balance of the debt remaining unpaid. In Sandburg v. Papineau, 81 Ill., 446, which was a case like that just supposed, the court, speaking of the power of courts of record over their own process, said: "It is essential to the administration of justice, and it by no means depends upon statutory enactment, but the power is coeval with the common-law courts; and such courts will recall their process and quash the same when it is shown that it would be illegal or inequitable to permit its further use and to allow it to be enforced. If a judgment were satisfied, and, through mistake or by design, an execution were to issue upon it, does any one suppose the court from which it issued is powerless to recall and quash it? Or if it was only partially satisfied, and an execution were to issue for the full amount of the judgment, would any one have the hardihood to say that the court could not order the credit to be indorsed on the execution? So the court has power in all cases to compel credits on judgments or executions where it would be illegal or inequitable to proceed and collect the amount claimed." The same rule was followed by this court in Brandenburgh v. Beach, 32 S. W., 168, 17 Ky. Law Rep., 560, where after judgment the debtor had paid, as garnishee, a part of his debt, and it was adjudged that the execution should be credited thereby. In McLear v. Morgan, 5 B. Mon., 282, a judgment was rendered against the husband and another for trespass, and the execution was levied on the land of the wife. The judgment was then assigned to the husband and two others; the husband, with the consent of the other assignees of the judgment, agreeing to settle upon the wife one-half of the wife's land, and securing two-thirds of the judgment to the other assignees. It was held that the

judgment might be enforced against the co-trespasser of the husband for one-half of the entire amount of the judgment. At common law a proceeding for the purpose of entering satisfaction of a judgment or preventing its execution in a manner that by reason of subsequent events would be oppressive was known as a writ of *audita querela*. 3 Blackstone, side page 505. But in modern practice this writ has dropped out of use, and the remedy is by motion in the court rendering the judgment. 1 Freeman on Judgments, section 95. Thus in Chambers v. Neal, 13 B. Mon., 256, where the defendant had been discharged in bankruptcy after the judgment was entered against him, he was allowed by motion to set up his discharge in bankruptcy. See, also, Luddington v. Peck, 2 Conn., 700; Smith v. Miller, 66 Tex., 78, 17 S. W., 399; B. & O. R. R. Co. v. Vanderwerker, 33 W. Va., 191, 10 S. E., 289; Saltmarsh v. Bower, 34 Ala., 613; Rauth v. N. Y. El. R. R. Co. (Super N. Y.), 23 N. Y. Supp., 750; Holden v. Dunn (Ill.), 33 N. E., 413, 19 L. R. A., 481.

The former judgment which was affirmed by this court was in substance as follows: (1) The city of Louisville was adjudged a lien upon the life estate of the defendant R. W. Woolley in all the parcels of land for the taxes for the years 1885-1888, with interest and costs. (2) The city was adjudged a lien upon the life estate of R. W. Woolley and the remainder interest of the two children in all the lots for the taxes for the years 1889-1900, with interest and costs. (3) The Fidelity Trust & Safety Vault Company, who held a mortgage lien created by Woolley and wife on certain lots, and the Louisville Trust Company, which held also a mortgage lien created by Woolley and wife on certain other lots, were respectively adjudged liens on the property gortgaged to them, subject to the city's lien for taxes. (4)

Some of the lots were not included in either of the mort-
gages, and to satisfy the tax liens the commissioner was di-
rected to sell for the taxes first the lots not mortgaged, or
so much of them as might be necessary, and then to sell
those covered by the mortgages, so far as necessary. (5)
After prescribing the terms of the sale, the judgment then
concluded with these words: "It is further adjudged by the
court that where the plaintiff's liens for taxes, interest, and
costs are upon both the life estate of defendant Robert W.
Woolley and the remainder in fee of the defendants Sophia
Woolley and Mary J. Fenley in and to certain parcels of
land herein above described, that, as between the said de-
fendant Robert J. Woolley and the said defendants Sophia
J. Woolley and Mary J. Fenley, the life interest of the former
in the proceeds of the sale of such parcels of land shall be
first subjected to the satisfaction of plaintiff's said lien
claims before the remainder interests in fee of the latter in
the proceeds of the sale of such parcels of land shall be sub-
jected to the satisfaction thereof; and the court reserves
power over the distribution of such proceeds, and to ascer-
tain and determine the shares therein of the said defendants,
respectively. It is now, however, adjudged that the life in-
terest of the defendant Robert W. Woolley, at seventy-three
years of age, according to his deposition herein, being his
nearest birthday, in the proceeds of all parcels of land,
wherein he has a life estate, is, under the life tables, thirty-
four and fifty-one one-hundredths per cent. thereof." The
judgment is an entirety, and in determining its meaning we
must look to the whole of it, and not to one clause alone.
It will be observed that in the first place the taxes for the
years 1885-1888 are adjudged a lien only on the life estate.
The court did not contemplate in the subsequent part of the
judgment anything conflicting with this. In other words,

it was not contemplated that the taxes for these years should become a charge on the remaindermen. What was said in the concluding part of the judgment as to the rights of the remaindermen and life tenant as between themselves referred to the taxes for the years 1889-1900, which were a charge both on the life estate and the remainder, and in this connection and for this purpose the court fixed the value of the life estate. The court had in mind only, in doing so, adjusting the rights of the life tenant and the remaindermen. He did not have in mind putting upon the remaindermen any part of the burden which he had previously adjudged to rest exclusively on the life tenant. He was confronted with an unusual situation. All of the lots were in lien for the taxes for the years 1889-1900. The life estate in all the property was in lien, in addition, for the taxes for the years 1885-1888. About one-half of the lots were also covered by the mortgages. To have sold the life estate alone in all the lots, and then to have sold the remainder so far as necessary, might have inflicted great loss on the life tenant as well as on the remaindermen, and might have unduly imperiled the security of the mortgagees, so that, as matters stood, this court affirmed the judgment on the ground that it seemed about as fair a way to subject the property as could be devised; but it was not then maintained for appellee that the judgment was aimed directly or indirectly to place a burden upon the remaindermen for the taxes which were due by the life tenant alone. When the case returned to the circuit court, and the mortgagees, in writing, consented that no sale should be made under their mortgages, and the remaindermen paid into court all that was a lien on their property, an entirely different state of case was presented. There was then nothing to sell for but the taxes which had been adjudged a lien only against the

life estate. The case was not substantially different from
that which would have been presented if R. W. Woolley had
owned individually an undivided one-half interest in fee in
all of the lots, and the children had owned the other half.
In such a case, if the children had paid into court their one-
half of the taxes, clearly the court might properly have or-
dered the commissioner to sell first Woolley's part of the
property for his part of the taxes. The case we have is even
stronger, for here the remainder was adjudged to be liable
for no part of the taxes for the years 1885-1888. It is con-
ceded in the argument that Woolley's life estate in the prop-
erty sold is not, in fact, of the value of $10,311.01; and so,
if the judgment stands, the property of the remaindermen
will be taken, to the extent of the deficiency, to pay the
debt which they do not owe. It is also conceded in the argu-
ment by the learned city attorney that, if the life tenant
had died on the day before the sale, he could not have then
gone ahead and sold under the judgment, as he did. This con-
cession, which is evidently correct, shows that the judgment
did not create a status, but merely provided a remedy for
the then existing conditions; and if the life tenant had sub-
sequently died, or if part of the taxes were subsequently
paid, the court could control the execution of the judgment
so as to do justice between the parties, for, if the life tenant
had died, there would have been the same difficulty as now
in executing the judgment literally without further order
from the court. The court was without authority to sell
the entire property for the taxes which were due only by
the life tenant, and divide the proceeds of the sale between
the life tenant and the remaindermen in the proportion of
the value of the life estate to the value of the remainder, for,
the remainder not being liable for the taxes due alone by
the life tenant, the city could not compel the remaindermen

to submit to a sale of their property as a means of satisfy-
ing a liability of the life estate. The chancellor did not
intend such a thing, nor did this court in affirming the judg-
ment. The mode of sale directed in the judgment was only
intended to meet present conditions, and, when the condi-
tions change, the chancellor may control the execution of
the decree to prevent injustice. The order for the sale of the
lots includes every interest in them, and when it becomes
unnecessary to sell certain interests the chancellor can con-
trol the execution of the decree by directing only other in-
terests to be sold. We therefore conclude that the court
should have sustained appellants' motion, and should have
entered an order as herein indicated.

Judgment reversed and cause remanded for further pro-
ceedings consistent herewith.